BLAISDELL *versus* CITY OF PORTLAND.

The inhabitants of a town or city, having reasonable notice of a defect in one of their highways, are liable for any injury arising therefrom after it is constructed and opened for travellers, although the time in which they were allowed to build it after its acceptance had not elapsed.

ON EXCEPTIONS from *Nisi Prius*, HOWARD, J., presiding.

CASE, for damages alleged to have been occasioned by a defect in Commercial street, in Portland, on Oct. 25, 1851.

The street, extending the whole length of the city, over tide water, and across the wharves and flats, was laid out by the city council, and duly accepted by the city on March 29, 1850, but no time was prescribed in which it should be constructed.

Upon such acceptance the city made a contract with the

Atlantic & St. Lawrence Railroad Co., to build the street, one portion of it in two, and the remaining in three years.

The evidence tended to show, that, for some months prior to Oct. 25, 1851, that portion of Commercial street extending many rods easterly and westerly of Commercial wharf, was so far made as to be used by the public for all purposes of business and travel as a public highway.

The injury was occasioned by a trench being opened by the proprietors of certain stores, to remove portions of the wharf upon that part of Commercial street covering the upper part of Commercial wharf. The trench had been opened for three or four days, and was not protected by any guard, into which in the evening the plaintiff fell, and received a severe injury.

Among other instructions to the jury, the Judge said, that when the location of Commercial street was accepted, in the manner stated, by the city, in March, 1850, it became a public street and way, and that the obligations and duties and liabilities of the city, in respect to it, as a public street and way, arose immediately; and that when any portion of it was made and used by the public as a public highway, if any person received any bodily injury, or suffered any damage in his property, through any defect or want of repair, in such portion of the street, the city would be liable for the damages sustained thereby, if they had reasonable notice of such defect or want of repair.

A verdict was returned for plaintiff, and the jury found specially, that at the place of the injury Commercial street had been in fact opened for public travel. The defendants excepted to this instruction.

*S. Fessenden,* in support of the exceptions.

1. At the time of the accident, Commercial street at that place was not such a street as the city was bound to keep safe and convenient. Special Acts of 1847, c. 25, § 1; Special Act of Feb. 28, 1832; 2d Vol. Special Laws of Maine, c. 248, p. 380; R. S., c. 25, § § 20, 57, 77, 89.

2. The plaintiff was in this street at his own hazard, the

time for building the street not having expired, and the public were bound to know when it was to be completed. *Lowell* v. *Inhabitants of Moscow*, 12 Maine, 300; *Drury* v. *Worcester*, 21 Pick. 44; *Ex parte Baring*, 8 Greenl. 137.

*Shepley & Dana, contra.*

RICE, J. — The case finds that the street, on which the injury occurred, was duly accepted by the city government, on March 29, 1850, by a vote ordering that such street had been duly and legally laid out, and that it be accepted, allowed, and established, and that it be known as Commercial street; but no time was stated in which the street was to be made; that the city immediately upon the acceptance and location of the street, as before mentioned, entered into a contract with the Atlantic and St. Lawrence Railroad Company, to construct and build the street, to be completed from ——— street to Union wharf, in two years, and the whole in three years; and the jury found, that at and before the time of the injury complained of, that part of Commercial street, where the injury was occasioned, had been in fact opened for public travel, and openly and publicly traveled by persons on foot, and in all kinds of vehicles.

The authority of the city government to locate and establish the street is not controverted.

The jury were instructed, that when the location of Commercial street was accepted by the city, in March, 1850, it became a public street and way, and that the obligations and duties and liabilities of the city, in respect to it, as a public street and way, arose immediately; and that when any portion of it was made, and used by the public, as a public highway, if any person received any bodily injury, or suffered any damage in his property, through any defect or want of repair in such portion of the street, the city would be liable for the damages sustained thereby, if they had reasonable notice of such defect or want of repair.

By the defence it is alleged that this instruction is errone-

ous, and that the liability of the city did not attach until the time had elapsed for the completion of the street, according to the contract, which had been made to build it, and that those who, anterior to that time, went thereon, did so at their peril.

It is provided in § 57, c. 125, R. S., that all highways, townways, causeways and bridges, laid out or being within the bounds of any town, or any plantation, such as is described in § 43 of this chapter, shall be duly opened and kept in repair, and amended from time to time, that the same may be safe and convenient for travelers and their horses, teams, carts and carriages.

For the construction of new roads, § 20 of the same chapter provides, that there shall be allowed to the county, town or plantation through which any such road is laid out, a time not exceeding three years within which to open and make the same.

By § 77, every town may authorize its surveyors or other persons, to enter into contracts for making or repairing the highways or townways within the same.

It is now contended, that the time prescribed in the contract with the Railroad Co., within which the street was to be constructed, was equivalent to a vote by the city council, when the road was accepted, allowing the same time in which to make it.

Such cannot be the legitimate construction of these acts. It will be observed, that the time within which roads are to be made, is to be prescribed by the County Commissioners, and not by the towns whose duty it is to make the same. The city council in establishing the street in question performed the function of County Commissioners. Contracts for making, or repairing ways, are made by towns, or by their authority, and such contracts are in no way connected with the duty of laying out, locating or establishing ways.

Nor does section 20 provide, that ways shall not be opened until the expiration of three years, or the time allowed by the County Commissioners within which to make them.

There is no prohibition against towns opening roads as much earlier than the time allowed, as they may think proper.

If no time is prescribed by the County Commissioners, then, according to general principles of law, the way must be opened within a reasonable time, which under our statute could not exceed three years.

But the question arises, what are the liabilities of the town in case a road is constructed and opened for public travel before the expiration of the time allowed for making it?

In *Loker* v. *Damon*, 17 Pick. 284, SHAW, C. J., remarked, "so if the town, intending not to take the whole time allowed them to make and complete the road, should finish it, and actually lay it open for travel, before the time fixed by the order, it might be considered as a highway from the time it should be so in fact laid open and offered to the public." And again, in *Drury* v. *Worcester*, 21 Pick. 44, "and should the town protest against the opening of a highway for use, if they take no measures to give effect to such protest, by keeping it closed, or by keeping up such bars and visible signs, as clearly to indicate to travelers, that it is not an open and public highway, they cannot justly avoid the responsibility which attaches to them. It follows as a necessary consequence, that whenever by positive act or tacit permission, they suffer a highway to be opened to public use, and to be actually used by the public, the town becomes responsible for its safe condition." And again, in *Bliss* v. *Deerfield*, 13 Pick. 102, "time must be allowed after the adjudication to do the needful work. If it is not done within the time allowed, or required, those whose duty it is, are to be compelled by the various modes known to the law. But when they have undertaken to do it, and profess to have done it, and remove the bars, and open it for public use, this is a permission and invitation to travelers to use it, and their liablity for damages attaches. * * * * *

The general fact to be proved is, that the road was opened for public use."

When a highway has been laid out and accepted, it is thence forward to be known as a public highway. *State* v. *Kittery*, 5 Maine, 259.

But the mere fact of establishing a highway by judicial action, does not of itself so open it to the public as to render towns liable for accidents that may occur to travelers thereon. After it is thus legally established, it is to be prepared for public use. Labor is to be performed upon it. Bridges are to be built, hills cut down, and valleys filled up; obstructions are to be removed and rough places to be made smooth. To do this, time is required, and as has been seen, for that purpose a reasonable time is allowed. But when this work has been performed,, when the way has been made and thrown open for public use and travel, then the city or town must see that it is safe and convenient, and if injuries occur to those who are traveling thereon by reason of defects in such way, the town will be liable.

Nor is there any hardship in this rule, for in constructing new roads or in repairing old there is little difficulty, when they are not in such condition as to be safe and convenient to pass upon, in erecting barriers for the protection of travelers, or at least, by some signal, to admonish them of their danger.

To hold that travelers and strangers, before entering upon an open thoroughfare, should be required to search the public records to see if the time allowed for making them had expired, would be unreasonable, and still more unreasonable would it be to hold, that they should search out contractors to learn of them whether the time specified in their contracts for completing such ways had expired.

*Exceptions overruled.*
*Judgment on the verdict.*