ALOYSIUS KREBS et al., Respondents, v. BAM-
BRICK BROTHERS CONSTRUCTION COM-
PANY, Appellant.

Springfield Court of Appeals, June 6, 1910.

1. DAMAGES: Injuries to Realty: Decrease in Rentals: Nuisance:
Measure of Damages. In a suit for damages to real estate
caused by the operation of a stone quarry, the rule as to the
measure of damages is held to be: that where the injury is a
permanent one, the measure of damages is the difference in
valuee of the realty immediately before and immediately after
the infliction of the injury, and in determining the decrease in
the valuation of the property, the decrease in rental value may
be shown as evidence bearing upon that question; but where
the injury is caused by the defendants maintaining a nuisance
which may be abated, as in this case, and the injury to the
property may be repaired at any time, the defendant cannot
complain if the measure of damages is fixed at the loss of rents
and the cost of repairs.

2. ——: ——: ——: ——: ——. In a suit for damages
for permanent injury to real estate caused by the maintenance
of a nuisance, a recovery for loss of rents in addition to the
depreciation in value cannot be had as that would be *pro tanto*
a double recovery, but evidence of the decreased rental value of
the property is admissible as bearing upon the question of the
depreciation in value of the realty.

3. PRACTICE: Damages: Theory of Trial Binding on Parties: In-
structions. Where a cause is tried by both parties on the
same theory as to the measure of damages, and evidence is in-
troduced on that theory without objection, the parties are
bound thereby, and neither can complain of an instruction of
the court submitting the question of damages on that theory.

4. DAMAGES: Excessive Verdict: Actual Damages. In a suit
for damages for injury to real estate caused by the operation
of a stone quarry the evidence is examined and held sufficient
to support the verdict for actual damages.

5. ——: Nuisance: Operation of Stone Quarry: Punitive Dam-
ages. Defendant had been enjoined from operating a stone
quarry in a way that would injure plaintiff's property. This
injunction was violated and defendant's foreman, when in-

formed that the judge who had issued the injunction had sent word to him to be more careful, sent back a profane message to the judge and said he took orders 'from no one. *Held,* in an action for damages to the real estate injured by the operation of the quarry, that punitive damages could be recovered.

Appeal from the St. Louis City Circuit Court.—*Hon. Virgil Rule,* Judge.

AFFIRMED (*upon remittitur*).

*T. J. Rowe, Thos. J. Rowe, Jr.,* and *Henry Rowe* for appellant.

Instruction No. 2 is bad because plaintiffs could not recover for both the damage inflicted on the building and for the loss of rent. Trust Co. v. Bambrick, 149 Mo. 560; Sheehy v. Street Ry., 94 Mo. 574; Martin v. Railroad, 47 Mo. App. 452.

*Walther & Muench* for respondents.

(1) The measure of damages arising from a continuing nuisance is the actual damage up to the beginning of the action, without reference to the value of the inheritance. Ready v. Railroad, 98 Mo. 470; Smith v. Railroad, 98 Mo. 20; Irie v. Minigal, 66 Mo. App. 437; Pinney v. Berry, 61 Mo. 367; Sutherland on Damages (3 Ed.), sec. 1039; Sedgwick on Damages, secs. 93, 947, 948; Wood on Nuisances, sec. 511. (2) Loss of rents from vacancies caused by nuisances is a proper element of damage. Givens v. Studdiford, 86 Mo. 149. (3) Damage to plaintiffs' buildings is also to be compensated for. Ready v. Railroad, 98 Mo. App. 470; Graves v. Railroad, 69 Mo. App. 574; Sutherland on Damages, secs. 1038, 1048, 1049. (4) Defendant did not ask an instruction particularizing the elements of damage and therefore cannot be permitted to object to the plaintiffs' instruction on the measure of damages. Wood v. Kelly, 82 Mo. App. 598; Fisher v. Transit Co.,

198 Mo. 591; Forrester v. Railroad, 116 Mo. App. 37; Rose v. McCook, 70 Mo. App. 183; Geisman v. Electric Co., 173 Mo. 654; Smith v. Fordyce, 190 Mo. 30. (5) Where a nuisance is continued after a judicial decree establishing the nuisance, exemplary damages should be given. Paddock v. Somes, 51 Mo. App. 320; Wood on Nuisances, sec. 868; Sutherland on Damages, secs. 1038, 1052; Standard Oil Co. v. Kinnaird, 13 Ky. L. R. 269. (6) The amount assessed by the jury for punitive damages is not excessive. Mueller v. Transit Co., 108 Mo. App. 325; Trauermann v. Lippincott, 39 Mo. App. 478; Harlan v. Wabash Railroad, 117 Mo. App. 537; McNamara v. Transit Co., 182 Mo. 676; Gildersleeve v. Overstoltz, 90 Mo. App. 518; Wamsganz v. Wolff, 86 Mo. App. 205.

COX, J.—Plaintiffs are joint owners of certain real estate in the city of St. Louis on which were located some three or four buildings, some of which had shingle roofs and some composition roofs. Defendant is a corporation and opened a stone quarry near plaintiffs' buildings, and in the operation of such quarry, dirt and stones were thrown on to plaintiffs' ground and on to their buildings, injuring the roofs of the buildings, and upon one occasion a large stone weighing ninety pounds was thrown on to the roof of one building, through which it crashed, broke through the ceiling and demolished a wash tub and chair in the kitchen. In the operation of the quarry, blasts were frequently exploded which caused the injuries aforesaid, as well as being annoying to the residents in plaintiffs' houses. To prevent such injury and the continuation of the operation of the quarry in such a way as to constitute a nuisance, plaintiffs, and others brought suit by injunction, and on May 9, 1907, obtained a final judgment against defendant by which it was perpetually enjoined from so operating its quarry, or permitting the same to be so operated as to throw dirt, rocks or stones on any of

the property of the plaintiffs, or to jar or shake plaintiffs' buildings so as to impair a comfortable use and occupancy of said property for dwelling-house purposes, etc.

This suit was filed September 21, 1907, and its purpose is to recover damages for the injuries, and further alleges that the nuisance was willfully, maliciously and wantonly maintained, and asks for punitive damages. Trial was had before a jury, verdict found for plaintiffs in the sum of five hundred dollars actual damages, and fifteen hundred dollars punitive damages. Judgment was rendered accordingly and defendant has appealed.

The evidence on behalf of plaintiffs tended to show that the operation of the quarry, the throwing of stones and dirt upon their buildings and premises, continued after the judgment by injunction on May 9th, the same as before. That upon one occasion the plaintiff spoke to defendant's foreman, who was in charge of the quarry, about it, and said to him, "There has been some heavy blasting going on here, and Judge McDonald told me to tell you to be careful, you would get into trouble if you didn't." The foreman said: "You tell Judge McDonald to go to hell. I don't take orders from anybody."

Defendant contends that the instruction of the court on the measure of damages was erroneous. The instruction is as follows:

"If the jury find for plaintiffs, they will assess their damages at such sums as they may believe from the evidence will reasonably compensate plaintiffs for the injuries, if any, sustained by them directly resulting from the wrongful acts of defendant complained of, if any, taking into consideration the damage, if any, caused to plaintiffs' buildings, loss of rents, if any, prior to the date of the institution of this suit."

The objection now made to this instruction is that the injury proven in this case is an injury to the realty,

and that damages for such injury, and for loss of rents, could not both be allowed in the same action. We understand the rule to be that where the injury is a permanent one to the realty, the measure of damages is the difference in value of the realty immediately before and immediately after the infliction of the injury, but in determining the decrease in the valuation of the property the decrease in rental value may be shown as evidence bearing upon that question. [St. Louis Trust Co. v. Bambrick, 149 Mo. 560, 51 S. W. 706.] In a case of this kind where the injury is caused by defendant maintaining a nuisance, which may be abated, and the injury to the property may be repaired at any time, the defendant cannot complain if the measure of damages be fixed at the loss of rents and cost of repairs. [Ready v. Missouri Pacific Railway, 98 Mo. App. 467, 72 S. W. 142; Smith v. The Railroad, 98 Mo. 20, 11 S. W. 259; William H. Foncannon v. The City of Kirksville, 88 Mo. App. 279.]

Defendant now insists that the injury to the houses caused by the blasting was an injury to the realty, and that the loss of rents should have been excluded from the consideration of the jury in determining the damage. As suggested before if the injury is a permanent one to the realty, the loss of rents, or rather the decreased rental value of the property is admissible as bearing upon the question of the decreased value of the property by reason of the injury, but a recovery for loss of rents in addition to the depreciation in value cannot be had as that would be *pro tanto* a double recovery, for the depreciation in rental value would be supposed to be covered in the estimation of the injury to the realty. In this case, however, it does not appear that the loss of rents was occasioned by the injury to the realty, but was by reason of the existence of the quarry in such close proximity that the noise of the blasting, and the liability to throw stones and dirt upon and about the houses in which the

tenants lived, was what caused them to vacate the property, resulting in loss of rents. Furthermore, the defendant is in no position to complain in this case for the evidence, relating to the extent of the injury and the amount of damage thereby, was introduced upon the basis of loss of rents and cost of repairs, and this testimony was allowed to go in without objection, and, hence, the defendant cannot now complain that the jury was allowed, by the instruction of the court, to determine the amount of damages upon the same basis that the evidence was offered. Both sides having tried the case upon that theory they must now be bound by it.

It is next contended that the actual damages awarded, five hundred dollars—is excessive. There was evidence tending to show what the repairs cost; that is, the repairs upon the roof and the plastering. There was also evidence that the foundation had settled under one of the buildings, and without objection, the following question was asked of witness Welch: "Q. Assuming, Mr. Welch, that this building was fifteen years old and was, at the time it began to settle, in good condition for a building of that age, I would ask you what it would cost to restore it to proper condition from the condition you found it in when you examined it?" To this question the following answer was given: "Considering that it was fifteen years of age and in good condition, to bring the building up to its former condition if it was in good condition in place of the present condition, taking into consideration all of the interior doors and windows, etc., it would cost $750 to $800." To this question or answer no objection was made, and considering all of the testimony together, it is sufficient to support the verdict in the amount of five hundred dollars.

Defendant asked an instruction that no punitive damages should be allowed in this case, and he now insists that the punitive damages allowed are excessive.

That the evidence in this case would warrant the as-sessment of punitive damages there can be no question. There had been a judicial determination upon May 9th of the right of defendant to operate this quarry in the way that it did, and permanent injunction had been issued against it, enjoining it from continuing the oper-ation of the quarry in a way to injure plaintiffs and in the face of this judgment of the court, the operations were continued as before, and when the attention of defendant's foreman was called to the fact that he was violating the judgment of the court and was likely to get into trouble, his answer was that he took orders from nobody, meaning thereby that he was knowingly disregarding the judgment of the court. This clearly made a case warranting the assessment of punitive damages. [Paddock v. Somes, 51 Mo. App. 320.]

We are inclined to think, however, that the amount assessed as exemplary damages was larger than should have been assessed, notwithstanding the attitude of de-fendant's foreman. The actual damages suffered were but five hundred dollars. The payment of that sum will compensate the plaintiffs for all they lost by rea-son of the wrongful acts of defendant, and it would seem that the assessment of fifteen hundred dollars as a punishment in this case is excessive. We could hardly assume that if this were a contempt proceeding and the punishment were to be assessed by the court for a violation of its injunction, that it would have imposed a fine equal to that amount. It occurs to us that the assessment as punitive damages of an amount equal to the actual damages suffered would have been ample in this case, especially in view of the fact that the defend-ant is also amenable to the court for violation of its order of injunction.

Finding no error in the trial of the case except the amount of punitive damages assessed, the judgment will be affirmed on condition that plaintiffs, within ten days, shall remit one thousand dollars of the amount assessed

:as punitive damages, but on their failure to do so, the judgment will be reversed and the cause remanded. All concur.